UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **NICHOLAS COLLIAS, et al.**,<br><br>Plaintiffs,<br><br>vs.<br><br>**MOTORCITY CASINO**,<br><br>Defendant. | **2:22-CV-12650-TGB-EAS**<br>HON. TERRENCE G. BERG<br><br><br>**ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANT'S MOTION TO<br>DISMISS**<br><br>**(ECF NO. 8)** |

During the COVID pandemic in 2021, after the vaccine had become available, MotorCity Casino in Detroit adopted a vaccine requirement for certain employees. MotorCity's policy set a deadline by which all employees would need to be vaccinated or they would lose their jobs. The policy allowed for exceptions based on religious reasons, but MotorCity retained the discretion whether to accept or reject such reasons, and a number of employees who refused the vaccination for religious reasons were fired.

This lawsuit is brought against MotorCity, now the Defendant, by former employees, now the Plaintiffs, who were terminated after refusing to comply with MotorCity's mandatory COVID-19 vaccination policy. Their complaint alleges that MotorCity violated Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act

1

("ELCRA") by failing to accommodate their religious opposition to receiving the COVID-19 vaccine. Plaintiffs contend that Title VII and ELCRA required MotorCity to exempt them from the vaccination mandate because of their religious beliefs.

MotorCity filed a motion asking the Court to dismiss several claims of Plaintiffs' complaint. Specifically, Defendants say that under the requirements of Federal Rule of Civil Procedure 12(b)(6) three sets of claims must be dismissed: (1) the Title VII failure to accommodate claims raised by Plaintiffs Nicholas Collias, Nicole Leone, and Kenneth Duff; (2) the Title VII retaliation claims raised by all Plaintiffs; and (3) the ELCRA claims raised by all Plaintiffs. Defendant's Mot. to Dismiss, ECF No. 8. The Court agrees with some of Defendant's contentions, but not all. Consequently, for the reasons detailed below, MotorCity's motion to dismiss is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

On October 6, 2021, MotorCity informed "all current non-union associates" of its COVID-19 vaccination mandate. Plaintiffs' Amended Complaint, ECF No. 7, PageID.40. The vaccination policy required non-union employees to provide proof of vaccination by October 22, 2021, or alternatively, to file religious and/or medical accommodation requests by October 15, 2021. *Id.* at PageID.41. Under the policy, non-union employees who failed to get vaccinated or obtain an accommodation waiver would be terminated on October 22, 2021. *Id.*

2

Plaintiffs were non-union associates subject to the vaccination policy who worked in four casino departments: Slots, Pit, Cage, and Transportation. Defendant's Reply, ECF No. 14, PageID.241. Shortly after being notified of the policy, all Plaintiffs filed requests for religious accommodation with MotorCity except Plaintiffs Collias and Leone. ECF No. 7, PageID.42–44. Collias and Leone did not request religious accommodation because they believed that doing so would be futile. *Id.* at PageID.43. Collias and Leone allege that they were under this impression "because they both encountered discrimination and/or learned of the discrimination through personal observation." *Id.*

MotorCity required Plaintiffs to fill out a Request for Accommodation Form to document their specific religious beliefs and how those beliefs conflicted with the vaccination policy. *Id.* at PageID.44; ECF No. 12-1, PageID.213–17. When Plaintiffs completed the Accommodation Form, MotorCity's Human Resources department conducted interviews with Plaintiffs regarding their answers. ECF No. 7, PageID.47; ECF No. 12, PageID.190. During the interview, MotorCity asked questions to assess whether Plaintiffs' religious beliefs were the reason for their requested accommodation. ECF No. 7, Page.ID.47–48. These questions included:

> Do you have any science-based concerns about the vaccine? What is the religious nature of your concerns about the vaccine?…Why are you requesting an accommodation to the vaccine? Do you have any political concerns about the vaccine?

…What stance have your religious leaders taken on the COVID-19 vaccine? How does accepting the COVID-19 vaccine conflict with your beliefs?

*Id.*

On October 22, 2021, MotorCity terminated Plaintiffs Collias and Leone because they failed to provide proof of vaccination and did not request any religious accommodation. *Id.* at PageID.42–43. The other Plaintiffs (including Duff) did make requests for religious accommodation, but MotorCity denied their requests. MotorCity's denial letters explained that despite Plaintiffs' sincere beliefs, providing a vaccination exemption would impose an undue hardship on the company. *Id.* at PageID.51. MotorCity then terminated[1] those Plaintiffs whose accommodation requests were denied because they failed to submit subsequent proof of vaccination. *Id.* at PageID.58.

Plaintiffs filed this lawsuit on January 6, 2023. Before bringing suit, all Plaintiffs except Duff filed timely charges with the U.S. Equal

---

[1] Although Plaintiffs allege that Collias and Leone were terminated on October 22, 2021, they do not make clear whether and when any other Plaintiffs were terminated. For example, Plaintiffs' amended complaint suggests that despite terminating Collias and Leone, MotorCity placed all other Plaintiffs on unpaid suspensions beginning November 12, 2021. ECF No. 7, PageID.53. Elsewhere, it is alleged that MotorCity terminated the other Plaintiffs on October 30, 2021. *Id.* at PageID.58. Because MotorCity does not appear to dispute that Plaintiffs were terminated, *see* ECF No. 8, PageID.72, for the purposes of resolving this motion, the Court will assume that all Plaintiffs were terminated sometime on or after October 22, 2021.

4

Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue. *Id.* at PageID.39.

## II.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit or claim where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." Consideration of a Rule 12(b)(6) motion is generally confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

In evaluating the motion, courts "must construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement

to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678–79).

## III.   DISCUSSION

### A. Plaintiffs Collias's and Leone's Title VII Failure to Accommodate Claims

To succeed on a Title VII failure to accommodate claim, Plaintiffs must show: "(1) that the employee holds a sincere religious belief that conflicts with an employment requirement, (2) that the employee informed the employer about the conflict, and (3) that the employee was discharged or disciplined for failing to comply with the requirement." *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 355–56 (6th Cir. 2020); *see also What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, EEOC (May 15, 2023), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ("Employees must tell their employer if they are requesting an exception to a COVID-19 vaccination

requirement because of a conflict between that requirement and their sincerely held religious beliefs.").

MotorCity argues that Plaintiffs Collias and Leone cannot succeed on a failure to accommodate claim because they never filed a request to inform MotorCity of their need for religious accommodation. ECF No. 8, Page.ID.78. Plaintiffs insist that they need not have made an accommodation request because it would have been futile. ECF No. 12, PageID.193.

In support of their futility argument, Plaintiffs cite *Deister v. AAA Auto Club of Michigan*, 91 F. Supp. 3d 905 (E.D. Mich. 2015). In *Deister*, the court noted that "there is some authority that suggests an employer could be liable for failure to accommodate even if the employee has not requested an accommodation." *Id.* at 925. But *Deister* did not address futility with respect to a religious accommodation claim. Instead, *Deister* involved a disability accommodation claim where the court explained that "when a request would be futile, we have excused the failure to make it *when the need for an accommodation was obvious to the employer*." *Id.* (emphasis added) (quoting *Clark v. Whirlpool Corp.*, 109 F. App'x 750, 755 (6th Cir. 2004)). In the context of disability accommodations, the futility exception accounts for the inability of some persons with disabilities to effectively request accommodation while the need for it is obvious. *Id.* at 927. But Plaintiffs provide no substantive support for

extending the futility exception to religious accommodations. The Court thus declines to permit a futility exception under these circumstances.

Even if a futility exception was available for religious accommodation claims where the employer is aware of the employee's religious belief and the need for accommodation is somehow obvious, Plaintiffs cannot invoke such an exception here. First, Plaintiffs' vague and unsupported allegation that they "did not submit religious accommodation requests because they were told doing so would not be successful" does not plausibly show that MotorCity did not intend to comply with Title VII. ECF No. 7, PageID.43.

Moreover, Collias alleges that MotorCity was aware that he "is a devout Greek Orthodox Christian" and that his "beliefs precluded vaccination." ECF No. 7, PageID.42. But to illustrate that Collias's need for accommodation was not obvious to MotorCity, MotorCity cites a publication from the hierarchs at the Greek Orthodox Church encouraging followers to get vaccinated. ECF No. 8, PageID.79. Plaintiffs contend that in referencing a church's guidance to followers, Defendant inappropriately questions their religious beliefs. ECF No. 12, PageID.195. Although the Court must only consider the well-pleaded allegations in the complaint, and take them as true when considering a motion to dismiss, in pointing to the Greek Orthodox Church's pro-vaccination stance, however, MotorCity highlights that even awareness of Collias's religion—as alleged in the complaint—would not necessarily

or reasonably provide notice to an employer of a need for accommodation. At bottom, Collias's reliance on a conclusory statement that MotorCity was aware of his religious-based objection to the vaccine without any supporting allegations and his failure to make an accommodation request are fatal to his Title VII accommodation claim.

Lastly, Leone states that she is "devoutly religious and opposed the vaccine since she suffered a debilitating injury as a vaccine side effect during childhood." *Id.* at PageID.43. But Leone's admission that her opposition to the vaccine was based on an adverse health reaction to a childhood vaccination contradicts her claim that she required *religious* accommodation. In fact, by stating her objection in terms of health concerns, Leone did not provide any indication that her religious views required an accommodation. *See Wessling v. Kroger Co.*, 554 F. Supp. 548, 552 (E.D. Mich. 1982) (finding that the plaintiff's accommodation "was not in terms of a request for an accommodation of her religious practices," such that the employer "did not have proper notice of her request for a religious accommodation"). Therefore, even if religious accommodation claims were subject to a futility exception, Leone cannot invoke it here when her objection was not stated in religious terms.

Accordingly, Defendant's motion to dismiss Plaintiffs Collias's and Leone's Title VII failure to accommodate claims is granted.

### B. Plaintiff Duff's Title VII Claims

MotorCity moves to dismiss Plaintiff Duff's Title VII failure to accommodate and retaliation claims because he failed to timely file an EEOC charge. ECF No. 8, PageID.81. In response, Duff points to the law interpreting the requirements of the single filing rule, saying that his claims should be allowed to "piggyback" off other Plaintiffs' EEOC charges, which were timely. ECF No. 12, Page.ID.197.

Title VII requires an employee to file an EEOC complaint before bringing an employment discrimination lawsuit. *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 839 (6th Cir. 1994). This filing requirement exists to provide the EEOC with (1) "sufficient information so that it may notify prospective defendants" and (2) "the opportunity to eliminate the alleged unlawful practices through informal methods of conciliation." *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995). Still, in certain circumstances, an employee who fails to file an EEOC charge may meet this requirement under what is called the single filing rule—provided that other plaintiffs have made timely EEOC complaints.

In adopting the single filing rule, the Sixth Circuit noted that "[t]he rationale behind the 'single filing rule' is the belief that it would be wasteful for numerous employees with the same grievances to file identical complaints with the EEOC." *Id.* at 840; *see also Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 196–97 (6th Cir. 1995) ("The single filing

10

rule serves to prevent a wooden application of the administrative charge requirement where the ends of the requirement have already been satisfied."). The single filing rule applies "where a substantially related non-filed claim arises out of the same time frame as a timely filed claim," such that an employee who failed to file an EEOC charge "need not satisfy Title VII's filing requirement to recover." *Wilson Metal*, 24 F.3d at 840.

MotorCity argues that Duff should not be permitted to take advantage of the single filing rule for two reasons. First, MotorCity maintains that "Duff fails to allege any facts to plausibly support the proposition that either MotorCity or the EEOC were on notice that there may have been liability as to [him]." ECF No. 8, PageID.83. Second, MotorCity insists that due to the individualized nature of accommodation claims, these claims should not be subject to the single filing rule at all. *Id.* Duff responds that MotorCity had notice of the alleged discrimination because he filed a request for accommodation with MotorCity and 13 other Plaintiffs filed EEOC charges with substantially similar claims arising from the same policy. ECF No. 12, PageID.198–200.

Plaintiff Duff has plausibly alleged that MotorCity had requisite notice of his claims. MotorCity does not dispute that Duff's claim, which was not filed with the EEOC, is substantially related to the claims of those 13 Plaintiffs who did file EEOC charges. Indeed, like Plaintiffs who filed EEOC charges, Duff was a non-union employee who requested

11

religious accommodation after MotorCity issued its mandatory vaccination policy, was denied the accommodation, and was subsequently terminated for failing to get vaccinated. Moreover, as Plaintiffs point out, MotorCity admits that Duff filed a request for religious accommodation through its internal procedures. Defendant's Answer, ECF No. 9, PageID.152. Duff's request referenced Title VII's protections for religious employees and cited religious-based concerns for his objection. ECF No. 12, PageID.199.

Nonetheless, MotorCity argues that because Duff worked in the Transportation department, he should not be allowed to rely on EEOC charges filed by Plaintiffs who all worked in different work units. ECF No. 14, PageID.240–41. Defendants are correct that the size of the work unit can affect whether the employer had sufficient notice of an employee's complaint. For a "modestly sized" work unit, the "similarity of grievances suffices" to meet the single filing rule's notice objectives. *Peeples v. City of Detroit*, 891 F.3d 622, 632 (6th Cir. 2018). But if the work group is "larger, 'there must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim.'" *Id.* (quoting *Howlett*, 49 F.3d at 195). Here, MotorCity's policy impacted every non-union employee in all work units. In other words, the policy itself was a "grievance" affecting a broad group of individuals who are all permitted to piggyback on the filed EEOC charges. *See Cerjanec v. FCA US, LLC*, No. 17-10619, 2018 WL

12

3729063, at *11 (E.D. Mich. Aug. 6, 2018) (Michelson, J.) (applying single filing rule for a plaintiff with non-filed disparate impact claims based on a policy affecting all salaried employees at Fiat Chrysler Automobiles).

Relatedly, applying the single filing rule to Duff's claim has no effect on the EEOC's ability to promote conciliation here: 13 Plaintiffs gave the EEOC opportunities to resolve their complaints through such informal channels. Given that the EEOC failed to reconcile the nearly identical charges in 13 other instances, little would be gained from having Duff file the same charges—it would seem to be a waste of resources. As the Fifth Circuit aptly summarized in *Oatis v. Crown Zellerbach Corp.*, "[i]f it is impossible to reach a settlement with one discriminatee, what reason would there be to assume that the next one would be successful[?]" 398 F.2d 496, 498 (5th Cir. 1968).

MotorCity's argument that the single filing rule cannot be applied to religious accommodation claims fares no better. In support, MotorCity cites just one case: *Smith v. Pyro Mining Co.*, 827 F.2d 1081 (6th Cir. 1987). In *Smith*, the court explained that in the religious accommodation context, "what may be a reasonable accommodation for one employee may not be reasonable for another." *Id.* at 1085. But *Smith* involved the reasonableness of the employer's accommodation and did not address whether the single filing rule should apply to multi-plaintiff religious accommodation cases. The *Smith* case is inapposite; it does not support MotorCity's position.

13

From the Court's own review, it does not appear that any federal court has specifically foreclosed reliance on the single filing rule for accommodation-based claims. In *Jarboe v. Maryland Department of Public Safety and Correctional Services*, No. 12-572, 2013 WL 1010357 (D. Md. Mar. 13, 2013), a District of Maryland court applied the single filing rule to permit a putative class of Maryland prisoners to rely on the administrative exhaustion of three plaintiffs. The *Jarboe* plaintiffs were all prisoners with disabilities who alleged that they were denied accommodations in violation of the ADA. *Id.* at *1. In denying the defendant's motion to dismiss the claims of plaintiffs who failed to exhaust administrative remedies, the *Jarboe* court explained that "although the extent of plaintiffs' disabilities and requested accommodations may vary to some degree, all of the plaintiffs are profoundly deaf and complain about substantially similar alleged failures to accommodate their disability in common aspects of prison life." *Id.* at *15. Accordingly, the court held that "application of the single-filing rule is appropriate in such circumstances." *Id.*

The single filing rule is arguably more germane to the religious accommodations at issue here than the disability accommodations in *Jarboe*. While Duff's specific religious beliefs may differ from those of other Plaintiffs', the accommodations sought for individuals who have not been vaccinated against COVID-19 would be both uniform and largely predetermined by the Centers for Disease Control and the Occupational

Safety and Health Administration. *See Protecting Workers: Guidance on Mitigating and Preventing the Spread of COVID-19 in the Workplace*, OSHA (June 10, 2021), https://www.osha.gov/coronavirus/safework. Given that the religious objections of all Plaintiffs are substantively similar and the accommodation sought (exemption from vaccination) was identical, the single filing rule can be applied. Therefore, MotorCity's motion to dismiss Plaintiff Duff's Title VII religious accommodation claims is denied.

### C. Plaintiffs' Title VII Retaliation Claims

To establish a prima facie case of retaliation under Title VII, a plaintiff must show:

> 1) [she or] he engaged in activity that Title VII protects; 2) defendant knew that [she or] he engaged in this protected activity; 3) the defendant subsequently took an employment action adverse to the plaintiff; and 4) a causal connection between the protected activity and the adverse employment action exists.

*Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). Plaintiffs contend that requesting religious accommodations constitutes a protected activity for which they were terminated. ECF No. 12, PageID.202–04. MotorCity argues that Plaintiffs cannot establish a prima facie retaliation case because requesting a religious accommodation is not a protected activity. ECF No. 8, PageID.84–86.

The parties make diametrically opposed arguments regarding whether requesting an accommodation is a protected activity because

15

there is something of an intra-circuit split on the issue. In 2003, the Sixth Circuit decided *Creusere v. Board of Education,* which found that the plaintiff "was clearly engaged in a protected activity by requesting religious accommodation." 88 F. App'x 813, 821 (6th Cir. 2003). But in 2020, in *Stanley v. ExpressJet Airlines*, the Sixth Circuit stated that "[a] request for an accommodation does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation." 808 F. App'x 351, 358 (6th Cir. 2020).

Courts in this district appear to rely on *Stanley* as controlling. For example, in *Garczynski v. Accident Fund Insurance Co.*, No. 22-12615, 2023 WL 3437294 (E.D. Mich. May 12, 2023), a case involving a COVID-19 vaccination policy also brought by Plaintiffs' counsel, the Honorable Gershwin A. Drain closely examined the relative persuasiveness of *Creusere* and *Stanley*. Judge Drain noted that in *Creusere*, the Sixth Circuit did not engage in any substantive legal analysis before deeming the request for religious accommodation a protected activity. *Id.* at *3. But by contrast in *Stanley*, "the Sixth Circuit assessed the text of Title VII and determined that a request for an accommodation does not qualify as a protected activity under the statute," making *Stanley* "far more persuasive on this issue." *Id.* Likewise, the Honorable Nancy G. Edmunds recently cited *Stanley* to note that requesting a religious accommodation does not constitute protected activity. *Smith v. COBX*

16

*Co.*, No. 22-12836, 2023 WL 2578945, at *2 (E.D. Mich. Mar. 20, 2023). Other Sixth Circuit district courts have likewise rejected *Creusere* in favor of *Stanley*. *See Hymes v. Sec'y of the Air Force*, No. 21-304, 2023 WL 1819106, at *9 (S.D. Ohio Feb. 7, 2023); *Edwards v. City of Cincinnati*, No. 22-503, 2023 WL 145898, at *5 (S.D. Ohio Jan. 10, 2023).

This Court has not identified any Sixth Circuit cases adopting *Creusere*'s approach. Given the soundness of the reasoning in *Stanley,* and the unanimity of the district courts in this circuit following it, the Court concludes that the rule in *Stanley* forecloses Plaintiffs' Title VII retaliation claims because requesting religious accommodation is not a protected activity.

But even assuming for the sake of argument that requesting a religious accommodation constitutes a protected activity, Plaintiffs' prima facie case still fails because they cannot demonstrate that their *accommodation requests* (the putative protected activity) were the but-for cause of their termination. In *Lucky v. Cobx Co.*, another COVID-19 vaccination policy case brought by Plaintiffs' counsel, the court concluded that the plaintiffs could not show that requesting a religious accommodation was the but-for cause of their termination. No. 22-12514, 2023 WL 3359607, at *3 (E.D. Mich. May 10, 2023) (Roberts, J.). Under nearly identical circumstances, the *Lucky* court concluded that "[the plaintiff's] own words, coupled with the terms of Defendant's policy, show that Defendant terminated her because she refused to get vaccinated

17

against COVID-19, not because she requested an accommodation." *Id.* Furthermore, the court emphasized that the plaintiff did not allege that "had she gotten vaccinated, she still would have been suspended and terminated because she had requested a religious exemption." *Id.* Instead, "[i]t was not [the plaintiff's] request for accommodation that resulted in her termination, but her failure to get the COVID-19 vaccine *after her request for accommodation was denied.*" *Id.*

Just as in *Lucky*, MotorCity's vaccination policy made clear that "[a]ny Non-Union Employee who has not received the First Shot…prior to October 22…will be terminated as of that date." ECF No. 7, PageID.41. Additionally, MotorCity's accommodation denial letter warned Plaintiffs that "failure to comply with [the vaccination] requirement will result in termination of your employment." *Id.* at PageID.51. And like the *Lucky* plaintiff, all Plaintiffs here who requested accommodations were not terminated upon making the accommodation request, but only after their requests were denied and they refused vaccination. Moreover, Collias and Leone, the two plaintiffs who did not even request accommodation were terminated *despite them not requesting a religious accommodation*. ECF No. 7, PageID.43. And like all other Plaintiffs, Collias and Leone were eventually terminated for failing to get vaccinated.

Even if Plaintiffs were found to have engaged in protected activity by requesting religious accommodation, they do not plausibly allege that these requests for accommodation were the but-for cause of their

18

termination. Therefore, and for the reasons given previously, the Court must grant MotorCity's motion to dismiss Plaintiffs' Title VII retaliation claims.

### D. Plaintiffs' ELCRA Discrimination Claims

MotorCity moves to dismiss all Plaintiffs' ELCRA religious discrimination claims on the ground that Plaintiffs have failed to allege essential elements of disparate treatment. ECF No. 8, Page.ID.90. The analysis for disparate treatment claims under ELCRA is the same as under Title VII. *Thomas v. Autumn Woods Residential Health Care Facility*, 905 F. Supp. 414, 419 (E.D. Mich. 1995). To make a prima facie case for disparate treatment, the plaintiff must show that they were a member of a protected class and that they were treated differently than similarly situated employees who are not members of a protected class, but who engaged in similar conduct. *Pitts v. Michael Miller Car Rental*, 942 F.2d 1067, 1070 (6th Cir. 1991).

To show that an employee was similarly situated, Michigan courts require the plaintiff to demonstrate that "'all of the relevant aspects' of his employment situation were 'nearly identical' to those of [another employee's] employment situation." *Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64, 70 (Mich. 1997) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Such relevant aspects include salary, benefits, experience, and work performance. *Id.* The Michigan Court of Appeals has also specifically noted that whether a putative

19

comparator has the same union or non-union status as the plaintiff is dispositive to the similarly situated analysis. *See Watson v. Genesys Reg'l Med. Ctr.*, No. 352134, 2021 WL 935678, at *21 (Mich. Ct. App. Mar. 11, 2021) (finding that the plaintiff failed to identify a similarly situated comparator because "[the plaintiff] was a member of the union and…[t]here is no evidence as to [a purported comparator's] status as a union member or non-union member").

Federal courts have also considered a comparator's union membership status in determining whether the plaintiff is "similarly situated." In *Arnold v. Marous Brothers Construction*, the Sixth Circuit upheld the district court's dismissal of the plaintiff's Title VII case because he did show that "he was replaced by or treated differently than similarly situated non-protected workers." 211 F. App'x 377, 381 (6th Cir. 2006). After the plaintiff, a Black non-union employee, walked off of the job site, the employer brought in two white union employees to do his job. *Id.* The *Arnold* court concluded that the white union employees did not actually replace the plaintiff, nor could the plaintiff show that he was "treated differently" than similarly situated employees. *Id.* Accordingly, the plaintiff's prima facie case failed as a matter of law. *Id.*

More pointedly in *Davis v. Ineos ABS (USA) Corp.*, a Southern District of Ohio court explained that "no discriminatory intent may be inferred from defendant's decision to treat differently union members and non-union members" for Title VII disparate treatment claims. No.

09-773, 2011 WL 1114409, at *11 (S.D. Ohio Mar. 24, 2011). Because union employees are uniquely situated in the workplace, they cannot be comparators for non-union employees who are treated differently. *Id.* (citing *Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165, 1170 (11th Cir. 1988)); *see also Gaskins v. Rock-Tenn Corp.*, 982 F. Supp. 2d 760, 777 (S.D. Ohio 2013) ("Although Plaintiff [a non-union employee] protests that a union employee should be viewed as an equal to him, the undersigned disagrees.").

Plaintiffs have not plausibly alleged that they are similarly situated to other non-vaccinated non-union employees who did not request religious accommodations. Plaintiffs assert that MotorCity treated them differently from union employees, vendors, and customers. ECF No. 7, Page.ID.38. But none of these groups can be considered "similarly situated" to Plaintiffs under ELCRA. Vendors and customers are not MotorCity employees at all. And as discussed above, union employees cannot be considered "similarly situated" to Plaintiffs as non-union employees. Indeed, Plaintiffs have not alleged that MotorCity treated any employees who made non-religious accommodation requests more favorably than Plaintiffs who sought religious accommodation. Plaintiffs' prima facie case of disparate treatment under ELCRA fails, and Defendant's motion to dismiss Plaintiffs' ELCRA claims is granted.

21

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 8) is **GRANTED in part** and **DENIED in part**.

Accordingly, therefore,

The claims of Plaintiffs Nicholas Collias and Nicole Leone under Count I are hereby **DISMISSED** with prejudice.

The claims of Plaintiff Kevin Duff, and of all other Plaintiffs under Count I, remain in the case and are not dismissed.

Counts II and III are **DISMISSED** with prejudice as to all Plaintiffs.

**IT IS SO ORDERED.**


Dated: September 30, 2023          s/Terrence G. Berg
                                   TERRENCE G. BERG
                                   UNITED STATES DISTRICT JUDGE