UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARK DALLOO, KENNETH DUFF, JOSEPH HISSOM-GALANTY, RITA KING, BEATRIX MUREL, KEVIN POLLACK, TODD MILO RUNYON, MATTIA SAFADI, SUSIE STOKES, DENISE TERRY, AUDONTE WALKER, and NIHAD ZORA,** | **2:22-CV-12650-TGB-EAS** <br><br> HON. TERRENCE G. BERG <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION (ECF NO. 40),** |
| Plaintiffs, <br><br> vs. <br><br> **MOTORCITY CASINO,** <br><br> Defendant. | **AND DENYING PLAINTIFFS' MOTION FOR REVISION OF ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF NO. 43)** |

In October 2021, during the COVID-19 pandemic, Defendant MotorCity Casino required its non-unionized workforce to submit proof of vaccination against the COVID-19 virus. MotorCity's policy allowed medical and religious exemptions to the vaccine requirement. Plaintiffs, all non-union employees working in supervisory roles at MotorCity, assert they each requested religious exemptions from the vaccine requirement but their requests were denied and they were subsequently terminated. Plaintiffs then sued MotorCity alleging that it failed to accommodate their religion under Title VII of the Civil Rights Act of 1964 and subjected them to retaliation and discrimination under Title VII and the Michigan Elliott Larsen Civil Rights Act ("ELCRA").

The Court subsequently entered an Order dismissing Plaintiffs' Title VII retaliation and ELCRA claims, as well as the claims of two Plaintiffs—Nicholas Collias and Nicole Leone. ECF No. 18. The Court later entered an order denying Plaintiffs' motion for partial summary judgment, granting in part and denying in part Defendant's motion for summary judgment, and denying Plaintiffs' motion to strike the declaration of Darryl Fuchs, dismissing the claim of Plaintiff Ramon Hana only, but allowing the remaining Plaintiffs' Title VII religious accommodation claims to proceed. ECF No. 38.

Now before the Court are Plaintiffs' motion for reconsideration of the Court's order on the summary judgment motions and motion to strike Fuchs' declaration, ECF No. 40, and Plaintiffs' motion for revision of the Court's order on Defendant's motion to dismiss, ECF No. 43. MotorCity filed responses in opposition to both motions. ECF Nos. 42, 45.

For the reasons that follow, both Plaintiffs' motion for reconsideration and their motion for revision will be **DENIED**.

## I.   BACKGROUND

### A. Procedural History

Fifteen Plaintiffs—Nicholas Collias, Mark Dalloo, Kenneth Duff, Ramon Hana, Joseph Hissom-Galanty, Rita King, Nicole Leone, Beatrix Murel, Kevin Pollack, Todd Milo Runyon, Mattia Safadi, Susie Stokes, Denise Terry, Andonte Walker, and Nihad Zora—all non-union

2

employees working in various supervisory capacities in Defendant MotorCity Casino's operations in October 2021, brought this lawsuit against MotorCity on November 2, 2022. ECF No. 1. Plaintiffs asserted claims for religious discrimination-failure to accommodate under Title VII and the Michigan ELCRA (Counts I, III), and retaliation under Title VII and the ELCRA (Counts II, IV). *Id.*

Plaintiffs filed an Amended Complaint on January 6, 2023. First Amended Complaint ("FAC"), ECF No. 7. In that Amended Complaint, Plaintiffs assert three claims: (1) religious discrimination-failure to accommodate under Title VII; (2) retaliation under Title VII; and (3) religious discrimination under the Michigan ELCRA. *Id.*

MotorCity filed a motion to dismiss Plaintiffs' First Amended Complaint, ECF No. 8, which was fully briefed, ECF Nos. 12, 14. On September 30, 2023, the Court entered an order dismissing Plaintiffs Nicholas Collias' and Nicole Leone's Title VII failure to accommodate claims and dismissing all Plaintiffs' Title VII retaliation and ELCRA religious discrimination claims. ECF No. 18. Accordingly, the only remaining claim was Plaintiffs' Title VII failure to accommodate claim by Plaintiffs Dalloo, Duff, Hana, Hissom-Galanty, King, Murel, Pollack, Runyon, Safadi, Stokes, Terry, Walker, and Zora.

Following the close of discovery, Plaintiffs filed a motion for partial summary judgment, ECF No. 24, and Defendant MotorCity filed a motion for summary judgment, ECF No. 25, both of which were fully briefed.

ECF Nos. 27, 28, 29, 30. In Plaintiffs' motion for partial summary judgment, they argued, in part, that the Declaration of Darryl Fuchs filed by MotorCity in support of its motion for summary judgment should be stricken because Fuchs was not listed in MotorCity's initial disclosures nor identified in its discovery depositions. ECF No. 28, PageID.2369–70.

Following the July 2, 2025 hearing on the parties' cross-summary judgment motions before this Court, Plaintiffs filed a motion to strike the declaration of Darryl Fuchs on July 7 2025, ECF No. 36, to which MotorCity responded. ECF No. 37. Plaintiffs again argued that Fuchs' declaration should be stricken because MotorCity did not name him in its initial disclosures or provide the information Fuchs utilized in his declaration during discovery. ECF No. 36, PageID.2500–01. Plaintiffs asserted they were substantially harmed by this failure because they were unable to depose Fuchs or seek further follow-up discovery regarding the information alleged in his declaration. *Id.*

On July 28, 2025, the Court entered an order denying Plaintiffs' motion for partial summary judgment, granting in part and denying in part Defendant's motion for summary judgment, and denying Plaintiffs' motion to strike the declaration of Darryl Fuchs. ECF No. 38. The Court dismissed the claim of Plaintiff Ramon Hana only, with the remaining Plaintiffs' religious accommodation claims allowed to proceed. *Id.* In the Order, the Court declined to strike Fuchs' declaration given that Plaintiffs did not contest most of the statements in the declaration. *Id.*

PageID.2643–44 fn. 5. The Court further stated that it found a genuine issue of material fact as to whether MotorCity could accommodate Plaintiffs' religious beliefs, or whether such an accommodation would cause an undue hardship to MotorCity, without considering the attendance "data and statistics" information contained in Fuchs' declaration that Plaintiffs seek to strike. *Id.*

### B. The Instant Motions

#### 1.  Plaintiffs' Motion for Reconsideration

On August 5, 2025, Plaintiffs filed a motion for reconsideration of the Court's order on the summary judgment motions and the motion to strike Fuchs' declaration. ECF No. 40. Plaintiffs argue that the Court made a mistake when it declined to strike Fuchs' declaration, and they deny that they admitted most of the allegations in Fuchs' declaration. Plaintiffs assert that they do not know who Fuchs is and contend that the affidavit should be stricken because it cannot be authenticated. *Id.*

MotorCity filed a response to Plaintiffs' motion for reconsideration, as ordered by the Court. ECF Nos. 41, 42. MotorCity argues that Plaintiffs' motion for reconsideration should be denied because it represents their fourth attempt to re-argue the same issue and simply rehashes the same arguments already considered by the Court. ECF No. 42. MotorCity contends that Plaintiffs have in fact admitted most of the allegations in Fuchs's declaration and further that Plaintiffs cannot be surprised by MotorCity's undue hardship assessment because Dr. David

5

Turner, Vice President of Human Resources, testified multiple times in his deposition that concerns over absenteeism driven by the fourteen-day quarantine requirement were a primary factor in MotorCity's decision to implement the vaccine requirement and in finding that accommodating Plaintiffs would have presented an undue hardship.

### 2.  Plaintiffs' Motion for Revision

On September 2, 2025, Plaintiffs filed a motion entitled "Motion for Revision of Order Granting in Part and Denying in Part Defendant's Motion to Dismiss." ECF No. 43. In this motion, Plaintiffs ask the Court to 'rescind' its September 30, 2023 Order on MotorCity's motion to dismiss, and to "reinstate" Plaintiffs' ELCRA disparate treatment claim. *Id.*

MotorCity filed a response in opposition to Plaintiff's motion. ECF No. 45. It argues that the motion should be denied because it is untimely, filed 710 days after the Court's order on the motion to dismiss, and that reinstatement of the ELCRA claim at this very late stage of the proceedings would unduly prejudice MotorCity. MotorCity further argues that, in any event, the Court reached the correct result because the facts as alleged by Plaintiffs do not support an inference of religious discrimination under the ELCRA.

## II.   LEGAL STANDARDS

### A. Motion for Reconsideration — E.D. Mich. LR 7.1(h)

Motions for rehearing or reconsideration of non-final orders in this Court are governed by Eastern District of Michigan Local Rule 7.1(h), which provides, in relevant part:

(h) Motions for Rehearing or Reconsideration.

\* \* \* \* \*

(2) Non-Final Orders. Motions for reconsideration of non-final orders are disfavored. They must be filed within 14 days after entry of the order and may be brought only upon the following grounds:

(A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;

(B) An intervening change in controlling law warrants a different outcome; or

(C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

(3) No Response and No Hearing Allowed. No response to the motion and no oral argument are permitted unless the court orders otherwise.

To succeed on a motion for reconsideration, the movant "must show that the Court made a mistake based on the record before it, and rectifying the mistake would change the outcome." *Dassault Systèmes,*

7

*SA v. Childress*, 828 F. App'x 229, 236–37 (6th Cir. 2020) (citation omitted). Moreover, "[a] motion for reconsideration is not intended as a means" for a party to rehash arguments that the Court has rejected. *Saltmarshall v. VHS Children's Hosp. of Michigan, Inc.*, 402 F. Supp. 3d 389, 393 (E.D. Mich. 2019) (Lawson, J.), *aff'd*, 831 F. App'x 764 (6th Cir. 2020.

### B. Motion for Revision—Fed. R. Civ. P. 54(b)

Federal Rule of Civil Procedure 54(b) provides, in relevant part:

> (b) any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment" "as justice requires." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citations omitted); *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, No., 16-MD-02744, 2024 WL 1142348, at *3 (E.D. Mich. Mar. 15, 2024) (Lawson, J.). However, because of the interest in finality, a court should grant motions for reconsideration in very limited circumstances. *McWhorter v. ELSEA, Inc.*, No. 2:00CV473, 2006 WL 3483964, at *2 (S.D. Ohio Nov. 30, 2006). "[T]hat rare action usually must be supported by '(1) an intervening change of controlling law; (2) new

evidence available; or (3) a need to correct a clear error or prevent manifest injustice.'" *HRT Enters. v. City of Detroit*, 524 F. Supp. 3d 713, 719 (E.D. Mich. 2021) (Lawson, J.) (quoting *Rodriguez*, 89 F. App'x at 959), *aff'd*, 163 F.4th 319 (6th Cir. 2025). "Generally, a manifest injustice or a clear error of law requires unique circumstances, such as injunctive relief scenarios or superseding factual scenarios" or a complete failure to address an issue or claim. *McWhorter*, 2006 WL 3483964, at \*2 (citations omitted).

Motions for reconsideration under Rule 54(b) are not intended to be utilized to re-litigate issues previously considered. *Macdermid Inc. v. Electrochemicals Inc.,* Nos. 96-3995, 96-4072, 142 F.3d 435 (Table), 1998 WL 165137, \* 6 n. 7 (6th Cir. 1998). "This standard vests significant discretion in district courts. Justice does not require that the district court grant reconsideration on an issue that would not alter its prior decision." *Kirk v. Corr. Corp. of Am.*, No. 1:16-00031, 2017 WL 3172738, at \*4 (M.D. Tenn. July 26, 2017) (citation modified).

## III.   DISCUSSION

### A. Plaintiffs' Motion for Reconsideration of Order Denying Motion to Strike Fuchs Declaration (ECF No. 40)

Plaintiffs seek reconsideration, pursuant to E.D. Mich. LR 7.1(h)(2), of the Court's decision declining to strike the Fuchs' declaration. ECF No. 40. Plaintiffs argue that the Court made a "mistake" when it declined to strike that declaration and stated:

9

> Given Plaintiffs' admission of the majority of the statements in Mr. Fuchs' declaration, the Court will not strike it. Further, if Plaintiffs did not seek the attendance records during discovery, MotorCity is not precluded from relying on that information in its defense of Plaintiffs' claims.

Order, ECF No. 25, PageID.2643–44 fn.5. Plaintiffs dispute that they admitted the "majority" of Fuchs' statements in his declaration, contending that they only admitted Fuchs' job descriptions of Plaintiffs' job duties. In their motion, Plaintiffs list 10 paragraphs contained in Fuchs' declaration they now claim they did not admit. ECF No. 40, PageID.2663–65.

MotorCity responds that this motion represents Plaintiffs' fourth attempt to reargue this same issue, and contends that a motion for reconsideration is not an opportunity to simply rehash prior arguments. ECF No. 42. MotorCity asserts that the Court did not err in finding that Plaintiffs did not contest a majority of the allegations in Fuchs' declaration.

A review of the briefing demonstrates that the Court indeed did not make a "mistake" in its order denying the motion to strike Fuchs' declaration. In their Response to MotorCity's motion for summary judgment, in addition to the job description allegations, Plaintiffs also did "not contest" several more of the statements in Fuchs' declaration, as seen in the following quoted section of their brief:

10

6. Plaintiffs do not contest that "MotorCity was also required to maintain compliance with all pre-existing gaming regulations and licensure requirements."

7. Plaintiffs do not contest that the relevant occupational licensing included requirements for all Plaintiffs.

8. Plaintiffs do not contest Defendant maintained a System of Internal Controls.

9. Plaintiffs do not contest that Defendant "was required to comply with the provisions of its Development Agreement with the City of Detroit."

10. Plaintiffs do not contest that the Development Agreement requires Defendant to "operate a casino with approximately 100,000 square feet of gaming area 24 hours per day[.]"

Pls. Response, ECF No. 28, PageID.2349–50. These statements are in Fuchs' declaration at paragraphs 5, 9, and 10. And while Plaintiffs now say that they did not admit to Fuchs' statement that "[a]t the time the Policy was implemented, the Tables Games Supervisors present during a shift generally supervised the maximum allowable number of table games," Fuchs Decl. ¶ 6, ECF No. 25-10, PageID.1548, that statement was also supported in MotorCity's motion by the "System of Internal Controls," which Plaintiffs do not contest and which MotorCity attached as an exhibit along with Fuchs' declaration. See ECF No. 25-9, PageID.1500 ("At least one Casino Executive must be on duty for every six-table games in operation[.]"). And if Plaintiffs disagreed with Fuchs' statements regarding the Gaming Board requirements or the obligations

11

of MotorCity's Development Agreement with the City of Detroit, they could have presented such evidence because those requirements and Agreement are matters of public record and equally available to Plaintiffs. In all, Plaintiffs essentially admitted, or did not contest, nine of the 16 substantive statements in Fuchs' declaration.[1] It was therefore no error for the Court to refer to Plaintiffs' having admitted to a "majority" of the declarations.

---

[1]    In addition to the data and statistics contained in paragraphs 3 and 4 of Fuchs' declaration, which Plaintiffs dispute, they also assert in their motion that they did not admit that:

- "To the extent replacement supervisors were not available and that applicable collective bargaining agreements required MotorCity to pay unionized employees not to work, closing areas of the casino would have added unanticipated payroll costs," and

- "To the extent replacement supervisors were available, it often resulted in overtime increasing payroll costs," and

ECF No. 40, PageID.2663–65 (citing Fuchs Decl. ¶¶ 3, 4, 7, 8, ECF No. 25-10). Plaintiffs also state that they did not admit two "non-substantive" statements in the declaration that: Fuchs is "currently employed as Director of Workforce Management by Detroit Entertainment, L.L.C. d/b/a MotorCity Casino" and that he has "personal knowledge of the matters contained in the Declaration and [he] is competent to testify to the facts set forth herein." *Id.* (citing Fuchs Decl. ¶¶ 2, 16). Fuchs made these statements under penalty of perjury and, other than referencing Google or AI searches, Plaintiffs have offered no reason to doubt the veracity of these two statements.

And while Plaintiffs assert that they also contested Fuchs' statements in his declaration regarding the attendance data and statistics contained in paragraphs 3 and 4 of Fuchs' declaration, Plaintiffs neglect to include, that the Court stated in its Order:

> In any event, as explained *infra*, the Court finds a genuine issue of fact as to whether MotorCity could accommodate Plaintiffs' religious beliefs without undue hardship, *even without relying on the attendance "data and statistics" in Mr. Fuchs' declaration.*

*Id.* (emphasis added). Thus, the Court did not rely on that contested data in finding that a material issue of fact existed as to undue hardship.

Plaintiffs also argue that the Court erred in declining to strike Fuchs' declaration because he was not listed in MotorCity's initial disclosures nor identified in its discovery depositions, and Plaintiffs were surprised by his statements in his declaration. Plaintiffs argue that under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion … unless the failure was substantially justified or harmless." Plaintiffs argue that the Court therefore erred in declining to strike Fuchs' declaration.

However, contrary to Plaintiffs' argument that Rule 37(c) compels striking Fuchs' declaration, "Rule 37(c)(1) does not compel the district judge to exclude testimony in its entirety." *Roberts ex rel. Johnson v.*

*Galen of Va., Inc.*, 325 F.3d 776, 783–84 (6th Cir. 2003) (citations omitted). "Although exclusion of late or undisclosed evidence is the usual remedy for noncompliance with Rule 26(a) or (e), Rule 37(c)(1) provides the district court with the option to order alternative sanctions 'instead of' exclusion of the late or undisclosed evidence 'on motion and after giving an opportunity to be heard.'" *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (citing Fed. R. Civ. P. 37(c)(1)(C)). The district court's decision to impose sanctions for any such noncompliance is subject to review under an abuse-of-discretion standard. *Id.* (citation omitted).

In declining to strike the entirety of Fuchs' declaration, the Court noted that Plaintiffs admitted to the majority of the statements in that declaration. Order, ECF No. 38, PageID.2643–44 fn.5. The Court further stated, however, that it finds a genuine issue of material fact as to whether MotorCity could accommodate Plaintiffs' religious beliefs without undue hardship even excluding the data and statistics allegations contained in paragraphs 3 and 4 of Fuchs' declaration. *Id.* The Court thus essentially excluded the quarantine leave of absence data and statistics set out in Fuchs' declaration that Plaintiffs' dispute in deciding the cross-motions for summary judgment.

Plaintiffs next argue that they were "surprised" by MotorCity's undue hardship contentions. However, those contentions—concerns over absenteeism for certain supervisory roles resulting from the 14-day quarantine requirement and the resulting effect on casino operations at

14

that time as "driving" the undue hardship analysis—were made many times during the deposition of Dr. David Turner, MotorCity's Vice President of Human Resource, and thus can hardly have been a "surprise" to Plaintiffs. *See* Deposition of David Turner at 16, 19, 29–30, 36, 56–57, 59–64, ECF No. 25-17, PageID.1624–25, 1627–29, 1634–36. Dr. Turner further testified that union employees were not required to vaccinate because MotorCity was unable to negotiate that requirement with the union through the collective bargaining process. *Id.* at 20, PageID.1625. And while Plaintiffs' counsel claims to be unable to find any information about Mr. Fuchs, he is well known to several of the Plaintiffs, having worked for MotorCity since May 1999 and having interacted with many of the Plaintiffs both professionally and/or socially over the years, including supervising them, vacationing with them, and helping them move. *See* Second Declaration of Darryl Fuchs ¶¶ 2, 4, 6–9, ECF No. 42-2, PageID.2746–48. Plaintiffs' counsel thus could have readily obtained information about Fuchs from their own clients.

Plaintiffs argue for the first time in their motion for reconsideration that the Fuchs' declaration should be stricken because it cannot be authenticated. ECF No. 40, PageID.2665. However, to succeed on a motion for reconsideration, the movant "must show that the Court made a mistake *based on the record before it* and rectifying the mistake would change the outcome." *Dassault Systèmes, SA*, 828 F. App'x at 236–37 (citation omitted and emphasis added). "A party may not utilize a motion

15

for reconsideration to introduce new legal theories for the first time, to raise legal argumentation which could have been heard during the pendency of the previous motion, or to present evidence that could have been adduced during the pendency of the original motion." *Id.* at 237 (citations omitted). "[A]bsent a legitimate excuse, an argument raised for the first time in a motion for reconsideration at the district court generally will be forfeited." *In re Greektown Holdings, LLC,* 728 F.3d 567, 575 (6th Cir. 2013) (citation modified). Thus, Plaintiffs have forfeited their argument that Fuchs' declaration should be stricken as unauthenticated.

And in any event, that argument is readily rejected. Fuchs' declaration was sworn testimony, made under penalty of perjury, not an item of evidence required to be separately authenticated. *See* Fed. R. Evid. 901(a); *see Bodman v. Dennis,* Nos. 14-1316/1363, 2015 WL 13927074, at *1 (6th Cir. Mar. 31, 2015) (explaining that in the context of motion practice, evidence can be authenticated by an affidavit or declaration). Plaintiffs argue that Fuchs' declaration is improper because it is not a notarized affidavit, citing Michigan law. ECF No. 40, PageID.2671. However, under federal law, declarations need only be signed under penalty of perjury. *See* 28 U.S.C. § 1746; *Long v. Adams,* 411 F. Supp. 2d 701, 707 (E.D. Mich. 2006) (Lawson, J.) ("The governing federal statute does not even require affidavits and declarations to be notarized, and it permits substantial compliance with its provisions.").

16

Fuchs stated in his declaration that he has "personal knowledge of the matters contain[ed] in this Declaration" and that he "declare[d] under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." Fuchs' Decl. ¶¶ 16, 17, ECF No. 25-10, PageID.1552. That is sufficient.

Otherwise, Plaintiffs' motion simply rehashes prior arguments that this Court has already considered, or cites to different cases for the first time in support of those prior arguments. However, because the Court must decide the motion for reconsideration on the "record and law before the court at the time of its prior decision," unless "an intervening change in controlling law warrants a different outcome," E.D. Mich. LR 7.1(h)(2), the Court will not consider additional caselaw cited for the first time by Plaintiffs in their motion for reconsideration that they could have advanced in their original motion but did not. Plaintiffs fail to cite to any "new facts" or "intervening change in controlling law" warranting a different outcome. *See* E.D. Mich. LR 7.1(h)(2).

As the Court found in its Order on the parties' cross-motions for summary judgment, there remain questions of fact as to whether certain Plaintiffs can meet their prima facie burden on their Title VII failure to accommodate claims, and thus they are not entitled to summary judgment in their favor even without considering Fuchs' declaration in support of Defendants' undue hardship defense. The Court further found that reasonable minds may differ as to the specific impact of Plaintiffs'

17

requested accommodations, and that this question poses a genuine issue of material fact precluding summary judgment in this case, even without considering the data and statistical information in Fuchs' declaration. Given the fact-specific inquiry into the undue hardship analysis in this case, the Court concludes that there is a genuine issue  of fact as to whether accommodating Plaintiffs' requested accommodations constituted an undue burden for MotorCity.

Accordingly, Plaintiffs' motion for reconsideration will be **DENIED.** However, if MotorCity includes Mr. Fuchs on its witness list for trial, the Court will address any objections to his appearance at that time.

## B. Plaintiffs' Motion for Revision of Court's Order on Motion to Dismiss (ECF No. 43)

On September 2, 2025, Plaintiffs filed a motion to revise the Court's order entered almost two years prior granting in part and denying in part MotorCity's Motion to Dismiss the First Amended Complaint. ECF No. 43. Plaintiffs move for relief under Fed. R. Civ. P. 54(b),[2] arguing that the Court committed an error of law by analyzing whether Plaintiffs' First Amended Complaint adequately pled the prima facie elements of a

---

[2] Plaintiffs did not properly move for reconsideration of the Court's September 30, 2023 Order under E.D. Mich. LR 7.1(h)(2); such a motion was required to "be filed within 14 days after entry of the order." *See Kniffen v. Macomb Cnty.,* No. 04-70497, 2006 WL 3205364 (E.D. Mich. Nov.3, 2006) (Roberts, J.) (construing a request for reconsideration under Rule 54(b) when the time limit of Local Rule 7.1(h) had expired).

disparate treatment claim under Michigan's ELCRA. Plaintiffs ask the Court to rescind its prior order on MotorCity's motion to dismiss and reinstate Plaintiffs ELCRA disparate treatment claim.

As stated above, a party seeking relief under Rule 54(b) generally must show "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959.

Plaintiffs argue that this Court dismissed Plaintiffs' ELCRA disparate treatment claim after analyzing the prima facie requirements of such a claim and finding that "Plaintiffs' prima facie case of disparate treatment under ELCRA fails." ECF No. 43, PageID.2761 (citing Order, ECF No. 18, PageID.281). Plaintiffs contend that a decision issued by the Sixth Circuit Court of Appeals approximately six months after this Court's order on the motion to dismiss held that "[a] plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in their complaint." ECF No. 43, PageID.2761 (citing *Savel v. MetroHealth Sys.*, 96 F.4th 932, 933 (6th Cir. 2024); *Sturgill v. Am Red Cross*, 114 F.4th 803. 809 (6th Cir. 2024)). Plaintiffs further argue that discovery in this case revealed that MotorCity granted a non-protected secular medical accommodation to Executive Chef Michael Golden," which Plaintiffs assert is evidence from which a reasonable juror could infer that MotorCity treated Plaintiffs differently with respect to a condition of their employment because of their religion. *Id.*

19

PageID.2762. Plaintiffs thus ask the Court to reinstate their ELCRA disparate treatment claim "because *Savel* invalidated the earlier ruling and there is a triable issue as to whether Plaintiffs 'received different treatment than a similarly situated non-protected employee.'" *Id.* (quoting *Howley v. Fed. Express Corp.*, 682 F. App'x 439, 445 (6th Cir. 2017)).

MotorCity argues in response that the two Sixth Circuit cases Plaintiffs rely on—*Savel* and *Sturgill*—do not represent an intervening change in the applicable case law, but instead simply restated longstanding principles that were already in place at the time this Court decided MotorCity's motion to dismiss. ECF No. 45, PageID.2830–31. Plaintiffs therefore could have timely filed a motion for reconsideration of the Court's order within 14 days, but did not. MotorCity further states that Plaintiffs were in possession of the information regarding the medical accommodation provided to Mr. Golden well over a year before they filed the instant motion. *Id.* PageID.2831. MotorCity argues that Plaintiffs' untimely demand now, more than a year later, after the close of discovery and after the motions for summary judgment have been filed and decided, would reinstate two named Plaintiffs that MotorCity did not have the opportunity to depose while discovery was still available, and would unduly prejudice MotorCity's ability to defend against this claim and seek summary judgment as to that claim. *Id.* MotorCity further contends that the Court reached the correct result in its Order on the

motion to dismiss because Plaintiffs did not plead facts plausibly stating an ELCRA disparate treatment claim. *Id.* at 2832–40.

The basis of Plaintiffs' contention here is not the kind of "rare action" requiring revision of this Court's prior order. *See HRT Enters.*, 524 F. Supp. 3d at 719; *Kirk*, 2017 WL 3172738, at *4 ("This standard vests significant discretion in district courts. Justice does not require that the district court grant reconsideration on an issue that would not alter its prior decision."). First, *Savel* does not represent an intervening change in the law justifying relief under Rule 54(b). While the Sixth Circuit confirmed in its March 2024 decision in *Savel* that "[a] plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in the[] complaint," it stated that the Supreme Court had announced this rule in its 2002 decision, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). *Savel*, 96 F.4th at 943. And while the *Savel* court noted that the Sixth Circuit had "at times strayed from the *Swierkiewicz* rule," it stated that "those departures were not permanent," and that "recent precedent [from 2022] confirms that *Swierkiewicz* controls." *Id.* (citing in part *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053 1060 (6th Cir. 2022) (reiterating that "plaintiffs are not required to *plead* facts establishing a prima facie case.") (quotation omitted)). Thus, the *Savel* decision relied upon by Plaintiffs does not constitute "an intervening change of controlling law." *HRT Enters.*, 524 F. Supp. 3d at 719.

The Court must also take into account that Plaintiffs waited almost two years after its decision on the motion to dismiss, and more than a year after receiving discovery about Mr. Golden, to seek to reverse the Court's dismissal order. No explanation is offered for such a lengthy delay. It is now simply too late to seek such relief. Discovery has long closed, the Court has ruled on dispositive motions, and this case is ready for trial. To allow Plaintiffs to now revive a long-dismissed claim  and long-dismissed Plaintiffs without any justification for the undue delay would severely prejudice MotorCity and its defense of this case. Courts in this District and Circuit have denied motions to amend for similar delays. *See Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020) (affirming a district court's finding of an undue delay where the plaintiff sought to amend its complaint nearly five years after filing the original, and after the matter was set for trial, because such action "imposes significant prejudice on defendants"); *Davidson v. Arlington Cmty. Schs. Bd. of Educ.*, 847 F. App'x 304, 311–12 (6th Cir. 2021) (affirming finding of undue delay where plaintiff waited almost a year after the court-ordered deadline for filing amended pleadings, and nearly four months after defendants moved for summary judgment, to file an amended complaint); *Lee v. Cincinnati Cap. Corp.*, No. 19-12133, 2022 WL 687246, at *5 (E.D. Mich. Mar. 8, 2022) (Cox, J.) (denying leave to amend over year after discovery ended and after multiple dispositive motions).

22

Moreover, a review Plaintiffs' First Amended Complaint confirms that the Court reached the correct decision, and that Plaintiffs failed to meet their burden to adequately plead an ELCRA disparate treatment claim against MotorCity. While a plaintiff need not establish every element of a prima facie case to survive a motion to dismiss, "when determining the sufficiency of a pleading at the motion to dismiss stage, courts still look to prima facie showing requirements for guidance." *Lonergan v. Gallagher Sharp, LLP*, No. 1:24-cv-02067, 2025 WL 2578155, at *3 & n.7 & 9 (N.D. Ohio Sept. 5, 2025) (collecting cases); *see also South Pointe Wholesale, Inc. v. Vilardi*, No. 1:17-CV-00052, 2018 WL 922379, at *2 (W.D. Ky. Jan. 23, 2018) (recognizing that "[w]hile the *prima facie* elements do not constitute a pleading standard, a plaintiff must allege specific facts necessary to show that they are entitled to relief against this legal backdrop") (citing *Swierkiewicz*, 534 U.S. at 512).

Plaintiffs initially stated a claim against MotorCity for failure to accommodate under the ELCRA in their original complaint, ECF No. 1, PageID.22–23, but, because the ELCRA does not require accommodation, *see Bass v. T-Mobile USA, Inc.*, 726 F. Supp.3d 749, 762 (E.D. Mich. 2024) (Cox, J.), Plaintiffs filed an amended complaint alleging a disparate treatment claim under the ELCRA instead. ECF No. 7, PageID.59–60. The allegations supporting this disparate treatment claim are identical to those alleged in support of the accommodation claim, except for the following two conclusory paragraphs in the disparate treatment claim:

23

116. Plaintiffs were discriminated against for having religious beliefs.

117. Defendants never explained why Plaintiffs were terminated for their religious beliefs when Defendant allowed other non-religious employees to continue working without vaccination.

*Id.* PageID.59.

While Plaintiffs are not required to plead facts establishing a prima facie case, or identify specific, similarly-situated employees who were treated more favorably, to assert a disparate treatment claim under the ELCRA, they are required to plausibly allege that MotorCity "treated them differently from other employees … because of their religion." *Savel*, 96 F.4th at 944 (citing *Keys v. Humana*, 684 F.3d 605, 610 (6th Cir. 2012) (plaintiffs state a plausible claim by "detailing a 'specific event[]' where Plaintiffs 1 and 2 were 'treated differently' than their nonreligious 'counterparts'" and that these allegations "allow a court to 'draw the reasonable inference' that Plaintiffs 1 and 2 were discriminated against due to their religion")).

Plaintiffs include no such allegations in their First Amended Complaint. Plaintiffs fail to allege that they were treated differently than any similarly situated employees with different religious beliefs. Plaintiffs allege that MotorCity "allowed other non-religious employees to continue working without vaccination," but the only persons Plaintiffs plead were not required to be vaccinated are "independent contractors,

vendors, or patrons" and "Union employees," "customers," and "vendors." FAC ¶¶ 72, 85–86, ECF No. 7. Plaintiffs otherwise allege that MotorCity "announced a COVID-19 vaccine mandate for *all* non-union employees and elicited accommodation requests" (not restricted by religious beliefs). *Id.* ¶ 21. Plaintiffs were all non-union, supervisory employees of MotorCity, and thus they are not alleged to be similarly-situated to *any* of the groups Plaintiffs plead were allowed "to continue working without vaccination." Plaintiffs' claims in their First Amended Complaint therefore fall short of the allegations that this Court and other courts have found sufficient to support an inference of disparate treatment discrimination under the ELCRA on a motion to dismiss. *See, e.g., Dickhudt v. COBX Co.*, No. 22-CV-12838, 2024 WL 4235470, at *6 (E.D. Mich. Sept. 19, 2024) (Berg, J.) (finding that "Plaintiff's proposed second amended complaint plausibly alleges that Defendant treated her differently than other employees based on her religious 'beliefs'" where she "alleges that 'Defendant allowed other unvaccinated employees without Plaintiff's same religious belief to be exempted from Defendant's vaccine mandate policy;' 'Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated;' 'Plaintiff was terminated and replaced with a person of different religious beliefs;' and 'other employees performing similar job duties were granted religious and medical accommodations to the vaccine.'"); *Escamilla v. Blue Cross Blue*

25

*Shield of Mich.*, No. 23-cv-10279, 2024 WL 2724158, at \*3 (E.D. Mich. May 28, 2024) (Parker, J.) (finding plaintiff's allegations that the defendants "allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from [its] vaccine mandate policy" and that she "was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated" sufficient to establish a disparate treatment claim); *Gorski v. Ascension St. John Hosp.*, 725 F. Supp. 3d 718, 724 (E.D. Mich. Mar. 24, 2024) (Grey, J.) (holding that plaintiff's allegations that the defendant handled religious exemption requests differently than "secular" ones and treated exemptions of Catholics and non-Catholics differently survive dismissal).

And while Plaintiffs now allege they can state an ELCRA disparate treatment claim because MotorCity granted Michael Golden a medical accommodation, they did not make those allegations anywhere in the First Amended Complaint. Further, as stated above, the ELCRA does not require an accommodation of religious beliefs or practices, *Bass*, 726 F. Supp.3d at 762, and so MotorCity's alleged refusal to grant an accommodation to the Plaintiffs fails to state a disparate treatment claim under the ELCRA. *See Sturgill*, 114 F.4th at 811–12 (plaintiff did not "set forth a standalone disparate treatment claim" under Title VII because "nothing in her complaint can be plausibly read to put the Red Cross on notice that she claims it treated her differently on account of her religious

26

beliefs separate from her failure-to-accommodate claim"); *O'Hara v. Driscoll*, No. 25-23-DLB-CJS, 2025 WL 3295156, at *5 (E.D. Ky. Nov. 26, 2025) (dismissing disparate treatment religious discrimination claim because "Plaintiff here does not allege any specific instances where the Corps treated him differently than those who were unvaccinated for nonreligious reasons," and "[w]ithout a more concrete allegation that the disparate, discriminatory treatment was specific to Plaintiff, the Court's judicial experience and common sense leads it to the conclusion that the Corps' treatment of Plaintiff was not based on his religion and was instead based on his vaccination status.").

Accordingly, for all these reasons, Plaintiffs' Motion for Revision will be **DENIED**.

### IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Moton for Reconsideration, ECF No, 40, and **DENIES** Plaintiffs' Motion for Revision, ECF No. 43.

**IT IS SO ORDERED.**

Dated: March 23, 2026          /s/Terrence G. Berg
                              HON. TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE

27